DECISION AND JOURNAL ENTRY.
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, James H., appeals from a judgment of the Wayne County Court of Common Pleas, Juvenile Division, that terminated his parental rights to his minor child, J.H., and placed him in the permanent custody of Wayne County Children Services Board ("CSB"). This Court affirms.
 {¶ 2} J.H., born July 30, 2002, is the child of Heather Amstutz Morris ("Mother") and James H. ("Father"). On May 9, 2003, before the present juvenile case was initiated, Judge Robert Brown of the General and Domestic Relations Division of the Wayne County Court of Common Pleas issued a civil protection order barring contact between Father and Mother and also between Father and J.H. *Page 2 
for five years. See Amstutz v. Howes, Wayne County Court of Common Pleas, Domestic Relations Division, Case No. 03 DR 0211.
 {¶ 3} Subsequently, on October 13, 2004, three children, including J.H., were removed from the home of Heather Amstutz Morris ("Mother") and her then husband, Michael Morris. On that same day, CSB filed a complaint in juvenile court, alleging that the children were dependent and seeking temporary custody. In its complaint, CSB alleged that Mother and Morris lacked sufficient income to provide for basic needs, had no heat in their home, lacked any means of transportation, had no on-going means of supplying food for the family, and were about to lose their home. The family had reportedly been sanctioned by the Department of Jobs and Family Services for noncompliance with regulations so they were not eligible for services and assistance from that source. Also, Father was alleged to be homeless, in arrears in child support, and not involved with his child.
 {¶ 4} On January 4, 2005, the parties stipulated to a finding of dependency, and, on January 14, 2005, the juvenile court placed the J.H. in the temporary custody of CSB. In due course, two six-month extensions of temporary custody were granted. On July 10, 2006, Father moved for legal custody of J.H. On August 30, 2006, Mother surrendered her parental rights to the child and the court accepted the surrender as being in the best interest of J.H. The agency moved for permanent custody on November 30, 2006. Following a hearing, the *Page 3 
trial court granted the agency's motion for permanent custody, concluding that the child had been in temporary custody of the agency for more than 12 of the last 22 months and that permanent custody was in the best interest of the child. Father timely appeals and assigns two errors for review.
 ASSIGNMENT OF ERROR I "The Trial Court erred when it improperly granted Wayne County [Children's Board's] Motion to Modify Disposition to Permanent Custody."
 {¶ 5} In his first assignment of error, Father contends that the trial court erred in granting permanent custody to CSB because he had complied with all of his case plan requirements except for visitation, which omission, Father specifically contends, was the fault of CSB. For the following reasons, we conclude that the argument is without merit.
 {¶ 6} As this Court has previously indicated, substantial compliance with a case plan, standing alone, does not prove that a grant of permanent custody to an agency is erroneous. See, e.g., In re Watkins v.Harris (Aug. 30, 1995), 9th Dist. No. 17068, at *4. "[I]t is entirely possible that a parent could complete all of his/her case plan goals and the trial court still appropriately terminate his/her parental rights."In re Gomer, 3rd Dist. Nos. 16-03-19, 16-03-20, and 16-03-21,2004-Ohio-1723, at ¶ 36. Case plan compliance, therefore, is not dispositive of the question of permanent custody. Rather, the termination of parental rights is governed by R.C. 2151.414 and the standards set forth therein. That statute does *Page 4 
not mandate the result advocated by Father. See In re Jones (Apr. 17, 2002), 9th Dist. No. 20766. Consequently, for this reason alone, Father's first assignment of error is without merit.
 {¶ 7} Furthermore, there is significant evidence indicating that Father has nevertheless failed to comply with his case plan. Father makes two claims regarding his case plan. First, he claims that he has met the needs of J.H. because he had made 49 child support payments at an average of $21.00 per week. The records custodian from the child support enforcement agency testified, however, that Father was in arrears in his child support for J.H., owing Mother $1458.66 and owing CSB $2440.18. Furthermore, Father also owed $19,779.01 in back child support on behalf of several other children he had fathered. According to the records custodian, Father's last support payment to the agency was made on October 30, 2006 — more than a year prior to the permanent custody hearing. Therefore, the evidence fails to support Father's claim that he met the needs of his child through payment of child support.
 {¶ 8} Next, Father challenges the case plan requirement that he "state his intentions regarding the care and custody of his child." Father contends that the obligation to "state his intentions" with regard to his child is "an amorphous requirement" and the case plan offered no guidance as to how to accomplish the goal, despite stating that the caseworker would assist him "with making *Page 5 
appropriate arrangements to visit his child as appropriate until terminated by court order."
 {¶ 9} Father claims that his intentions were made clear by his attendance at some of the juvenile court hearings, his motion requesting custody, and his motions to terminate the civil protection order. Father's key argument, however, appears to be that the agency failed to assist him in modifying the civil protection order issued by the general division of the common pleas court, and that he cannot, therefore, be held responsible for failing to visit with his child. Father's argument lacks merit.
 {¶ 10} The case planning assistance provided by children services agencies to parents in regard to visitation requirements typically includes such things as ministerially scheduling visitation sessions, providing bus passes for transportation, supervising or monitoring visitations, and offering basic parenting assistance or referring parents to parenting classes or other services, as needed. Typical assistance does not include, nor are children services agencies authorized to provide, legal advice or representation as would be involved in the modification of court orders. CSB had no responsibility to do what it was not authorized to do.
 {¶ 11} In addition, Father testified that his attorney filed a motion to modify the civil protection order with the domestic relations court that issued the order. A hearing on the motion was scheduled, but Father failed to attend the hearing. Father testified, in response to questioning by the juvenile court judge, that he did *Page 6 
not know about the hearing as his attorney did not know how to reach him. Father cannot now hold others responsible for matters as to which he himself has been neglectful.
 {¶ 12} Finally, the juvenile court judge acknowledged that Father was a very sympathetic figure who would like to be a part of his child's life, but found that Father never followed through with that desire. Father failed to demonstrate to the court that he could provide a stable and adequate home for the child. The trial judge noted that, during the course of these proceedings, the agency had nine different addresses for Father and information that he had six different jobs — none of which lasted more than a week or two. Father left messages that the caseworkers had difficulty returning because of inaccurate contact information. Father made appointments with caseworkers only to fail to keep them. And Father admitted he did not attend one critical hearing because he failed to inform his attorney of his new address. The trial judge found significance in the fact that Father offered no testimony of any relationship with this child prior to his removal from the home, and that Father admitted that he is not involved in the lives of any of his other six children. Father's parental rights had previously been terminated from two of them.
 {¶ 13} Appellant's first assignment of error is overruled.
 Assignment of Error II "The Trial Court improperly denied the motion to modify [the] civil protection order to allow visitation between father and child." *Page 7 
 {¶ 14} Through his second assignment of error, Father contends that the trial court erred in denying his motion to modify the civil protection order so as to permit visitation between him and his child.
 {¶ 15} On July 10, 2006, Father filed a motion in the instant case in the Juvenile Division of the Wayne County Court of Common Pleas, attempting to modify the civil protection order issued by Judge Brown in another case in the Domestic Relations Division of the Wayne County Court of Common Pleas. CSB opposed the motion, in part, on the basis that the juvenile court lacked jurisdiction to modify a civil protection order issued by a court in the Domestic Relations Division. The juvenile court judge ruled against Father.
 {¶ 16} On appeal, Father argues that the juvenile court had jurisdiction to modify the civil protection order since the child was under the jurisdiction of the juvenile court. The argument is without merit. The fact that the juvenile court had personal jurisdiction over J.H., does not mean that the juvenile court had subject matter jurisdiction to modify Judge Brown's ruling in a domestic relations case. Moreover, Father has failed to provide this Court with any order, case law, or statutory authority in support of his position that the juvenile court had authority to modify a civil protection order put in place by another judge, in another case, in another division of the Wayne County Court of Common Pleas.
 {¶ 17} Father's second assignment of error is overruled. *Page 8 
 {¶ 18} Father's two assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
 CARR, J. BAIRD, J. CONCUR. *Page 1