OPINION
{¶ 1} Appellant, K.R., Sr. ("father"), appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, terminating his parental rights and awarding permanent custody of his two children to Franklin County Children Services ("FCCS"). Because clear and convincing evidence supports the trial court's award of permanent custody, and because the trial court did not *Page 2 
abuse its discretion in allowing testimony regarding father's prior criminal activities, we affirm.
 {¶ 2} FCCS originally was involved with father's family in 1989 "because mother had a lot of neglect issues and drug and alcohol problems." (Tr. II, 66.) FCCS reopened the case on September 5, 2003 due to a domestic violence dispute between father and a then girlfriend that escalated to a physical fight on the lawn and resulted in police being called. On November 19, 2003, FCCS filed a complaint alleging K.L.R., born in 1994, and K.M.R., born in 1993, were neglected or dependent children. A temporary order of protective supervision was ordered for K.L.R. on December 1, 2003; the court entered court-ordered protective supervision for both children as of March 2, 2004 and adopted a case plan. A temporary order of custody for K.L.R. was entered in favor of FCCS on May 21, 2004 at father's request because K.L.R. was experiencing behavioral problems, such as running out of school, bringing sharp objects to school, and inappropriately using a lighter.
 {¶ 3} By magistrate's decision of July 27, 2004, adopted by the court on August 2, 2004, K.L.R.'s court-ordered protective supervision was terminated, and FCCS was awarded temporary custody of K.L.R.; K.M.R.'s court-ordered protective supervision was continued until an emergency care order was issued later in August because K.L.R. reported to his therapist that K.L.R's uncle sexually abused his sister, K.M.R. Five days later K.M.R. was returned to father's home against FCCS's recommendation. On October 27, 2004, an emergency care order again was issued to FCCS because father was charged with sexually abusing a relative. By magistrate's decision of February 9, *Page 3 
2005, adopted by the trial court on March 8, 2005, the trial court awarded temporary custody of K.M.R. to FCCS.
 {¶ 4} On March 30, 2006, FCCS filed a motion for permanent custody for both K.L.R. and K.M.R. Following an evidentiary hearing, the trial court issued a judgment entry granting FCCS's motion. Father appeals, assigning two errors:
 I. The trial court's grant of permanent custody of the children was not supported by clear and convincing evidence and was not in the best interest of the children.
 II. The trial court violated Appellant's rights by allowing testimony regarding alleged prior criminal activities or convictions which did not carry a sentence of death or imprisonment in excess of one year.
I. First Assignment of Error {¶ 5} Father's first assignment of error contends the judgment of the trial court awarding permanent custody to FCCS is not supported by the requisite clear and convincing evidence and is not in the best interests of the two children, K.L.R. and K.M.R.
 {¶ 6} As father correctly asserts, the right to rear a child is a basic and essential civil right. In re Hayes (1997), 79 Ohio St.3d 46. A parent must be given every procedural and substantive protection the law allows prior to terminating that parent's rights to the child. Id. Due process includes a hearing upon adequate notice, assistance of counsel, and, under most circumstances, the right to be present at the hearing.In re Thompson (Apr. 26, 2001), Franklin App. No. 00AP-1358.
 {¶ 7} In order to terminate father's rights, FCCS was required to demonstrate by clear and convincing evidence that (1) one of the four factors enumerated in R.C. 2151.414(B)(1) applies, and (2) termination of parental rights is in the child's best *Page 4 
interests. In re Gomer, Wyandot App. No. 16-03-19, 2004-Ohio-1723. Clear and convincing evidence is the measure or degree or proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. In re Abram, Franklin App. No. 04AP-220, 2004-Ohio-5435. It does not mean the evidence must be clear and unequivocal and does not require proof beyond a reasonable doubt. Id.
 {¶ 8} On appellate review, permanent custody motions supported by the requisite evidence going to all the essential elements of the case will not be reversed as against the manifest weight of the evidence. In reBrown, Franklin App. No. 03AP-969, 2004-Ohio-3314, at ¶ 11, citingIn re Brofford (1992), 83 Ohio App.3d 869; Abram, supra. Further, in determining whether a judgment is against the manifest weight of the evidence, the reviewing court is guided by the presumption that the findings of the trial court are correct. Brofford, supra, citingSeasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77. "The underlying rational of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id. at 80; Abram, supra.
 {¶ 9} To meet its obligation to establish one of the factors set forth in R.C. 2151.414(B)(1), FCCS's motion for permanent custody relied upon R.C. 2151.414(B)(1)(a), (b), and (d). R.C. 2151.414(B)(1)(a) allows custody where the child cannot or should not be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; R.C. 2151.414(B)(1)(b) authorizes permanent custody where the child is abandoned; and R.C. 2151.414(B)(1)(d) permits *Page 5 
permanent custody where the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999. Because the trial court's decision touches on three of the four factors set forth in R.C. 2151.414(B)(1), we address each of them.
A. R.C. 2151.414(B)(1)(d). {¶ 10} The evidence demonstrated K.L.R. was placed in the temporary custody of FCCS on August 2, 2004; K.M.R. was placed in the temporary custody of FCCS on March 8, 2005. FCCS filed its motion for permanent custody on March 30, 2006. Because the children were in the custody of FCCS for more than 12 months out of a consecutive 22-month period of time, FCCS was required to file a permanent custody motion. See R.C.2151.413(D)(1). This period of custody also provided grounds to award FCCS permanent custody under R.C. 2151.414(B)(1)(d). Accordingly, the evidence before the trial court met the requirements of R.C.2151.414(B)(1)(d).
B. R.C. 2151.414(B)(1)(b). {¶ 11} Although more significant to mother's rights, the court also determined mother had no contact with the children since 2004. She was notified of the proceedings concerning permanent custody and failed to appear. As of the hearing date in January 2007, the record continues to reflect the children had no contact with mother. Accordingly, the trial court could find mother abandoned the children pursuant to R.C.2151.414(B)(1)(b). See R.C. 2151.011(C) (specifying that "[f]or the purposes of this chapter, a child shall be presumed abandoned when the parents of the child have failed *Page 6 
to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of time").
C. R.C. 2151.414(B)(1)(a). {¶ 12} The trial court also concluded neither child could or should be placed with either parent. In reaching that determination, the trial court examined R.C. 2151.414(E) and concluded that despite reasonable case planning and FCCS's diligent efforts to assist the parents, the parents failed to remedy the problems that initially caused the children to be placed outside the home. The trial court further determined father is unable to provide a safe, stable and secure environment for the children because he has not completed the sexual offender education therapy required as a result of his conviction for gross sexual imposition. As additional support for its conclusion, the trial court noted that under the terms of father's five years of probation he is required to "not associate with anyone under the age of 18, nor be in the presence of anyone under the age of 18 unless another responsible adult is present." (Permanent Custody Judgment Entry, 6.)
 {¶ 13} The evidence presented at the hearing supports the trial court's disposition. According to the evidence, K.L.R. suffered from post-traumatic stress disorder, dissociative disorder not otherwise specified, and obsessive compulsive disorder. He exhibited severe behavioral problems, sexual reactive behavior, and a history of trauma, including sexual abuse, exposure to domestic violence, reports of physical abuse, and reports of neglect. He manifested school adjustment problems, poor concentration, anger outbursts, rages, very poor memory, and aggression. His therapist recommended that father have no visitation with him because not only was K.L.R. easily "triggered," but *Page 7 
some of the trauma visited on K.L.R. was through father. (Tr. I, 34, 37.) She specifically mentioned that K.L.R. slept with a ball bat at his side when he was at father's home, viewed the adult partying father allowed at the home, and witnessed the domestic violence between father and father's former girlfriend.
 {¶ 14} Given those factors, the therapist concluded K.L.R.'s mental health needs exceed what his biological parents can provide, and neither can furnish K.L.R. the environment he requires to address his aggressive behavior and his diabetes. As the therapist explained, even if father were to complete the case plan, she would have problems with K.L.R. returning to father's home because of the severity of K.L.R.'s symptoms and his mental health needs. Through a permanent commitment to FCCS, the therapist felt K.L.R. could have a safe and secure home he could call his.
 {¶ 15} K.M.R.'s therapist found K.M.R. had an adjustment disorder with disturbed emotions, including depression and emotional mood swings. The therapist testified that although she was not diagnosed with either, K.M.R. exhibited symptoms of post-traumatic stress disorder and sexual abuse, including an over sexualized manner and hygiene issues. According to the therapist, a stable environment was "key" to K.M.R.'s progress. (Tr. I, 83.) She, too, recommended no visitation with the biological parents for fear of aggravating K.M.R.'s symptoms and similarly did not recommend returning K.M.R. to either biological parent. Because K.M.R. needed to be placed where she could live for an extended period of time, the therapist recommended permanent custody to FCCS as the only way to achieve the stability K.M.R. needs. According to the therapist, the foster parents were interested in adopting K.M.R. *Page 8 
 {¶ 16} When pointedly questioned, the therapist offered that she felt K.M.R. to be unsafe with father from a sexual standpoint, as she believed some sexual conduct occurred between K.M.R. and her brother while she was in father's care, a matter K.M.R. was still struggling with as of the hearing. Because of father's recent gross sexual imposition conviction, the therapist also was concerned father might sexually abuse K.M.R., though the therapist acknowledged father's offense was against someone other than K.M.R.
 {¶ 17} In an attempt to counter the foregoing evidence, father testified to his efforts to meet each of the prongs of the case plan FCCS developed. In the end, the evidence showed father completed many aspects of the case plan, but did not complete parenting classes. According to father, he completed parenting classes when FCCS earlier was involved with his family; he stated that if he could find the certificate for those classes FCCS would deem the parenting class requirement to be met. He testified that because he was unable to find the certificate, he again signed up with either Salvation Army or Volunteers of America for classes to begin shortly after the hearing.
 {¶ 18} Complicating his attempts to regain custody of the children, father was convicted of gross sexual imposition regarding an 11 and one-half-year-old female relative. Although an earlier assessment recommended that he have the treatment prescribed for those who deny their offenses, father did not complete that treatment. According to the caseworker, father was rated a high risk to re-offend. He ultimately pleaded guilty to gross sexual imposition and served approximately five and one-half months of a two-year sentence. As a condition of father's five-year probation, he must *Page 9 
complete sex offender classes. Although father accomplished approximately one-half of the educational phase of that program by the time of hearing, a therapeutic phase follows. Altogether the program may take two years; he completed about six months as of the date of the permanent custody hearing. Moreover, a condition of his probation requires that he have no unsupervised contact with children under the age of 18. The last time father saw his children was before he was incarcerated, approximately November 2005.
 {¶ 19} Apparently aware of the complications his probation conditions posed, father testified the probation officer would permit him unsupervised contact with his children should the court grant him custody; father, however, did not present the testimony of the probation officer. Not only was the trial court not required to believe father's testimony, but that testimony left the trial court with a conundrum: father would be able to see his children if the court denied FCCS's motion, but the trial court could not grant the motion because, according to the conditions of probation, father was not allowed unsupervised contact with his children.
 {¶ 20} In the final analysis, FCCS provided clear and convincing evidence of father's failure to complete the case plan and of his inability to receive the children into his home due to his probation conditions. See In re L.M., Franklin App. No. 06AP-534, 2007-Ohio-1596. Moreover, the trial court's decision receives support in the testimony of the therapist actively involved with each child. Similarly supporting the trial court's conclusion is the testimony of the guardian ad litem who not only recommended that the motion of FCCS for permanent custody be granted but further testified that neither child wishes to be returned to father's custody. *Page 10 
D. Best Interests of the Children. {¶ 21} Because the trial court's decision is supported under R.C.2151.414(B)(1), we must determine whether the trial court properly found permanent custody is in the best interests of the children. See R.C.2151.414(D).
 {¶ 22} Under R.C. 2151.414(D)(1), the trial court considered the interaction and interrelationship of the children with their parents. The court noted mother had no contact with the children since sometime in 2004 and father had no visitation since November 2005. Both therapists testified in favor of permanent custody to FCCS and against further contact between the children and father.
 {¶ 23} Under R.C. 2151.414(D)(2), the trial court considered the wishes of the children. As the guardian ad litem testified, both children love their father but do not wish to be returned to his custody. K.M.R. was 13 years old at the time of the trial court's determination; K.L.R. was 12. As such, they were of sufficient maturity to express their preference.
 {¶ 24} The remaining factors, as well as the evidence supporting them, similarly buttress the trial court's determination. Under R.C.2151.414(D)(3), the children were in the temporary custody of a public service agency for 12 or more months of a consecutive 22-month period. The therapists testified to the need for legally secure placement, one that only could be achieved through the grant of permanent custody to the agency. See R.C. 2151.414(D)(4). Finally, under R.C.2151.414(D)(5)'s reference to one of the factors set forth in R.C.2151.414(E)(7) through (E)(11), the court noted one partially applies, as *Page 11 
father was convicted of one of the offenses set out in those sections, though not against a child who lived in his household at the time.
 {¶ 25} With those findings, supported through the evidence in the record, the trial court's determination that the best interests of the children are served through a grant of permanent custody to FCCS is not against the manifest weight of the evidence. Accordingly, father's first assignment of error is overruled.
II. Second Assignment of Error {¶ 26} Father's second assignment of error asserts the trial court erred in allowing testimony regarding alleged prior criminal activities or convictions that did not carry a sentence of death or imprisonment in excess of one year. In support, father relies on Evid.R. 609 which addresses impeachment by evidence of conviction of a crime.
 {¶ 27} As the trial court explained, however, it did not allow the testimony as impeachment evidence; rather, the trial court allowed it as evidence of father's fitness to regain custody of his children. Because the offenses at issue involved allegations of domestic violence and assault against his own two children, the trial court properly could consider the evidence in determining father's fitness to regain custody of both children. Indeed, the therapist noted the domestic violence in father's family to be a cause, in part, of K.L.R.'s problems. The trial court did not abuse its discretion in allowing the testimony. In reEpperly-Wilson Children (Aug. 6, 2001), Stark App. No. 2001CA00098 (finding Evid.R. 609 inapplicable to evidence of father's criminal history, as the evidence was not submitted for impeachment purposes but rather as relevant substantive evidence of father's lack of fitness); see, also, In re Grant (Feb. 8, 2001), Franklin App. No. 00AP-431 *Page 12 
and In re Morales (Apr. 12, 2001), Cuyahoga App. No. 78271 (both noting that R.C. 2151.414[E] requires a court to consider the parent's repeated incarceration or prior convictions in determining permanent custody). Father's second assignment of error is overruled.
 {¶ 28} Having overruled both of father's assigned errors, we affirm the judgment of the trial court.
Judgment affirmed.
 SADLER, P.J., and McGRATH, J., concur. *Page 1