OPINION
{¶ 1} Appellant, Tommy and Audrey Morris appeal the December 22, 2005 judgment of the Court of Common Pleas of Defiance County, Ohio, granting permanent custody of their daughter, Chloe, to the Defiance County Department of Job and Family Services.
 {¶ 2} Chloe was born on July 5, 2004 to the Morris' at Defiance Regional Medical Center. After birth, she was life-flighted to the Toledo Children's Hospital due to some serious medical problems. On July 7, 2004, the Defiance County Department of Job and Family Services were notified of the serious medical problems. On July 20, 2004, Chloe was released from the Toledo Children's Hospital and the Department of Job and Family Services requested and obtained emergency custody of Chloe. Chloe was then placed in temporary foster care with Jim and Melissa Gardner based on the evidence that Audrey and Tommy were seriously addicted to prescription drugs and that Chloe was born with an addiction to oxycotin. Also, on July 20, 2004, the Defiance County Department of Job and Family Services filed a complaint alleging that Chloe appeared to be a neglected and dependent child.
 {¶ 3} On September 2, 2004, Tommy was indicted by the Court of Common Pleas of Defiance County, Ohio on four counts of deception to obtain a dangerous drug. In addition, Audrey was indicted four counts of deception to Case No. 4-06-05 obtain a dangerous drug, one count of possession of cocaine and one count of endangering children.
 {¶ 4} On September 8, 2004, a hearing was held for adjudication regarding the neglected and dependent child allegations. At that time, Audrey and Tommy entered an admission of dependence in exchange for the dismissal of the neglect and abuse allegations. Thus, Chloe was found to be a dependent child and a case plan was developed with a goal of reunification. Pursuant to the case plan, Audrey and Tommy were to be evaluated by Five County Drug and Alcohol Agency, obtain medical examinations, obtain psychological examinations, attend training on an apnea monitor, attend CPR classes, and complete two parenting courses. Thereafter, the Court of Common Pleas Juvenile Division of Defiance County placed Chloe in the temporary custody of the Department of Job and Family Services for a period of one year or until July 20, 2005.
 {¶ 5} On January 13, 2005, a semi-annual review was conducted to establish what Audrey and Tommy had completed in their case plan. They had only completed one parenting course. In addition, it was noted that Audrey and Tommy sporadically attended their designated visitations with Chloe, specifically, attending 71 out of 130 designated visitations.
 {¶ 6} On January 25, 2005, Audrey and Tommy lost custody of their other daughter, Linzey, an eight-year old, to Audrey's parents because the Defiance County Department of Job and Family Services received a report from the police department stating that Audrey and Tommy had reported Linzey as missing for several hours when she was later found asleep in her bed. On February 15, 2005, Tommy was arrested for driving under the influence in Archbold, Ohio and tested positive for benzodiazepines and opiates. On June 21, 2005, it was believed that Tommy and Audrey were under the influence of some substance and caused a disturbance at McDonalds in Defiance, Ohio.
 {¶ 7} On July 5, 2005, the Defiance County Department of Job and Family Services filed for permanent custody of Chloe. Four days later, Tommy was arrested in Defiance, Ohio for driving under the influence and abusing harmful intoxicants. On July 14, 2005, Audrey was arrested for public intoxication of a controlled substance in Kentucky. On August 15, 2005, Audrey and Tommy plead guilty to numerous counts of deception to obtain dangerous drugs and were granted treatment in lieu of conviction. However, within seven days of being on community control, Audrey and Tommy tested positive for and admitted to the use of cocaine. In addition, Audrey tested positive for oxycotin on September 30, 2005. On October 3, 2005, Tommy was allegedly "huffing" paint fumes in the Department of Job and Family Services during a visit with Chloe for which he was arrested. On October 5, 2005, Tommy's community control treatment in lieu of conviction was revoked and he was sentenced to 56 months at the Ohio Department of Rehabilitation and Correction at Orient, Ohio. On October 31, 2005, Audrey's community control treatment in lieu of conviction was revoked and she was sentenced to 55 months at the Department of Rehabilitation and Correction at Marysville, Ohio.
 {¶ 8} On November 2, 3, and 4, 2005, a hearing was held by the Court of Common Pleas Juvenile Division of Defiance County regarding the motion for permanent custody of Chloe. On December 22, 2005, the trial court issued its Decision and Judgment ordering Chloe to be placed in permanent custody of the Defiance County Department of Job and Family Services; therefore, terminating Tommy and Audrey's parental rights to Chloe.
 {¶ 9} On January 23, 2006, Tommy and Audrey Morris filed a notice of appeal raising the following assignments of error:
 Assignment of Error 1 OHIO REVISED CODE SECTION 2151.414 ON ITS FACE AND IN ITSAPPLICATION VIOLATES THE SUBSTANTIVE AND PROCEDURAL DUE PROCESSGUARANTEES AND THE EQUAL PROTECTION CLAUSE OF THE CONSTITUTION OFTHE STATE OF OHIO AND THE CONSTITUTION OF THE UNITED STATES BYFAILING TO PROTECT A PARENT'S FUNDAMENTAL RIGHT TO RAISE HIS OWNCHILD.
 Assignment of Error 2 THE TRIAL COURT ERRED IN FAILING TO CONSIDER AVAILABLE OPTIONSTO PROTECT THE BEST INTEREST OF THE FAMILY.
 Assignment of Error 3 THE TRIAL COURT ERRED IN FINDING THAT THE CHILD HAD BEEN INTHE TEMPORARY CUSTODY OF THE CHILDREN'S SERVICE AGENCY FOR TWELVEOR MORE MONTHS AS DEFINED BY ORC 2151.414(B)(1)(d).
 Assignment of Error 4 THE TRIAL COURT ERRED IN FINDING THAT THE CHILD COULD NOT BEPLACED WITH ONE OF THE CHILD'S PARENTS WITHIN A REASONABLE TIMEOR SHOULD NOT BE PLACED WITH EITHER PARENT.
 Assignment of Error 5 THE TRIAL COURT'S DETERMINATION THAT THE GRANT OF PERMANENTCUSTODY OF CHLOE TO THE DEPARTMENT OF JOB AND FAMILY SERVICES WASIN CHLOE'S BEST INTEREST WAS AGAINST THE MANIFEST WEIGHT OF THEEVIDENCE.
 {¶ 10} In our review of a grant of permanent custody we shall note that "[i]t is well recognized that the right to raise a child is an `essential' and `basic' civil right." In re Hayes
(1997), 79 Ohio St.3d 46, 48, 679 N.E.2d 680, citing In reMurray (1990), 52 Ohio St.3d 155, 157, 556 N.E.2d 1169. "A parent's right to the custody of his or her child has been deemed `paramount'" when a parent is a suitable person. In re Hayes,supra; citing In re Perales (1977), 52 Ohio St.3d 89, 97,369 N.E.2d 1047. The Supreme Court of Ohio has held that a parent "must be afforded every procedural and substantive protection the law allows." In re Hayes, supra, citing In re Smith (1991),77 Ohio App.3d 1, 16, 601 N.E.2d 45.
 {¶ 11} In addition, trial courts are vested with broad discretion in determining the allocation of parental rights and responsibilities for the care of minor children. Blaker v.Wilhelm, 6th Dist. No. WD-04-003, 2005-Ohio-317, at ¶ 9, citingMiller v. Miller (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846. Therefore, absent an abuse of that discretion a trial court's decision regarding the allocation of parental rights and responsibilities for a minor child must be upheld. Masters v.Masters (1994), 69 Ohio St.3d 83, 85, 630 N.E.2d 665. The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140. Thus, it is within these constructs that we now examine the Morris' assignments of error.
 {¶ 12} The Morris' claim in their first assignment of error that R.C. 2151.414 violates the substantive and procedural due process guarantees and the equal protection clause of the Constitution of the State of Ohio and the Constitution of the United States by failing to protect a parent's fundamental right to raise one's own child. Thus, they are asserting that R.C.2151.414 is unconstitutional.
 {¶ 13} In this case, it is conceded that the constitutionality of R.C. 2151.414 was not raised at the trial court level and that such failure constitutes a waiver of that right. However, the Morris' claim that the waiver doctrine is discretionary and that pursuant to In re M.D. (1988),38 Ohio St.3d 149, 527 N.E.2d 286, "this court reserves the right to consider constitutional challenges to the application of statutes in specific cases of plain error or where the rights and interested involved may warrant it." We do not find that it is necessary to establish that the doctrine of waiver does not apply to this case because we have reviewed this issue previously inIn re Gomer (3d Dist. April 5, 2004), 2004-Ohio-1723, which was not accepted for review by the Supreme Court of Ohio,102 Ohio St.3d 1473.
 {¶ 14} As stated in In re Gomer,
 [t]he Tenth District Court of Appeals refused to find Ohio'sstatutory scheme for determining issues of permanent custodyunconstitutional. In re Thompson, 10th Dist. Nos.02AP-557, and 02AP-558, 2003-Ohio-580. The court stated that ithad "specifically rejected similar arguments in Thompson I"wherein the court stated:
 * * * it is apparent that the legislature in Ohio has madethe best interest of the child the touchstone of all proceedingsaddressing a permanent commitment to custody. The legislature hasalso recognized, however, that when the state seeks to terminateparental custody, parents are entitled to strict due processguarantees under the Fourteenth Amendment of the United StatesConstitution, including a hearing upon adequate notice,assistance of counsel, and (under most circumstances) the rightto be present at the hearing itself. Ohio has accordinglyincorporated appropriate due process requirements in the statutesand rules governing juvenile adjudication and dispositions, whichare reflected in the extensive and rather intricate statutoryframework expressed in R.C. 2151.413 and 2151.414. The statutesappropriately reflect the need to balance the extraordinarilysignificant rights and interests: parents' rights and interest inthe custody, care, nurturing, and rearing of their own children,and the state's parens patriae interest in providing for thesecurity and welfare of children under its jurisdiction, in thoseunfortunate instances where thorough and impartial proceedingshave determined that the parents are no longer in the bestposition to do so.
 In re Thompson, 2003-Ohio-580, at ¶ 23, quoting In reThompson (Apr. 26, 2001), 10th Dist. No. 00AP-1358.
 {¶ 15} We agree with the conclusion of the Tenth District and conclude that R.C. 2151.414 does not deprive a parent of due process rights. Accordingly, based on the foregoing reasons, the Morris' first assignment of error is overruled.
 {¶ 16} We shall consider the Morris' second, third, and fourth assignments of error together because these assignments of error require a close examination of the granting of the motion for permanent custody of Chloe to the Defiance County Department of Job and Family Services. In the second assignment of error, the Morris' claim that the trial court failed to consider available options to protect the best interest of the family. Specifically, they suggest that the trial court should have granted permanent custody or temporary custody to the grandparents, as an alternative to granting permanent custody to the Defiance County Department of Job and Family Services. The Morris' assert in their third assignment of error that the trial court erred in finding that Chloe had been in the temporary custody of the Defiance County Department of Job and Family Services for twelve or more months. In the fourth assignment of error, the Morris' argue that the trial court erred in finding that Chloe could not be placed with one of her parent's within a reasonable time or should not be placed with either parent.
 {¶ 17} In consideration of a motion for permanent custody, R.C. 2151.414(B)(1) states:
Except as provided in division (B)(2) of this section, thecourt may grant permanent custody of a child to a movant if thecourt determines at the hearing held pursuant to division (A) ofthis section, by clear and convincing evidence, that it is in thebest interest of the child to grant permanent custody of thechild to the agency that filed the motion for permanent custodyand that any of the following apply:
 (a) [t]he child is not abandoned or orphaned or has not beenin the temporary custody of one or more public children servicesagencies or private child placing agencies for twelve or moremonths of a consecutive twenty-two month period ending on orafter March 18, 1999, and the child cannot be placed witheither of the child's parents within a reasonable time or shouldnot be placed with the child's parents. (Emphasis added.)
* * *
For the purposes of division (B)(1) of this section, a childshall be considered to have entered the temporary custody of anagency on the earlier of the date the child is adjudicatedpursuant to section 2151.28 of the Revised Code or the date thatis sixty days after the removal of the child from home.
Furthermore, R.C. 2151.414(D) provides:
In determining the best interest of the child at a hearingheld pursuant to division (A) of this section or for the purposesof division (A)(4) or (5) of section 2151.353 or division (C) ofsection 2151.415 of the Revised Code, the court shall considerall relevant factors, including, but not limited to, thefollowing:
 (1) The interaction and interrelationship of the child withthe child's parents, siblings, relatives, foster caregivers andout-of-home providers and any other person who may significantlyaffect the child;
 (2) The wishes of the child, as expressed directly by thechild or through the child's guardian ad litem, with due regarddue to the maturity of the child.
 (3) The custodial history of the child, including whether thechild as been in the temporary custody of one or more publicchildren services agencies or private child placing agencies fortwelve or more months of a consecutive twenty-two month periodending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placementand whether the type of placement can be achieved without a grantof permanent custody to the agency;
 (5) Whether any of the factors in division (E)(7) to (11) ofthis section apply in relation to the parents and child.
 {¶ 18} In considering the second, third, and fourth assignments of error, we shall address the assignments of error in the order in which they would be approached through the analysis of the statutes provided above. Therefore, we shall first address the third assignment of error regarding the Morris' claim that the trial court erred in finding that Chloe had been in the temporary custody of the Defiance County Department of Job and Family Services for twelve or more months.
 {¶ 19} In this case, Chloe was "removed" from the custody of the Morris' on July 20, 2004 and placed in temporary custody with the Defiance County Department of Job and Family Services. On September 8, 2004, Chloe was adjudicated a dependent child. On July 5, 2005, the Defiance County Department of Job and Family Services filed a motion for permanent custody. It is true that at the time the motion was filed Chloe had been in temporary custody for approximately 10 months; however, the permanent custody motion was prosecuted and adjudicated through the application of R.C. 2151.414(B)(1)(a) which provides that the child was in temporary custody with a children services agency for less than twelve of twenty-two consecutive months prior to the filing of the motion for permanent custody.
 {¶ 20} The Morris' assert that the trial court made a finding pursuant to R.C. 2151.414(B)(1)(d) which provides:
(d) The child has been in the temporary custody of one or morepublic children services agencies or private child placingagencies for twelve or more months of a consecutivetwenty-two month period ending on or after March 18, 1999.
However, the trial court actually stated the following:
This finding has already been discussed under thedetermination of best interest. Chloe has been in the temporarycustody of the Department nearly sixteen consecutive months sinceshortly after her birth with no realistic prospect of beingreturned to her parents * * *. This Court is aware that there issome controversy concerning the computation of the twelve or moremonths of a consecutive twenty-two month period which may makethat provision inapplicable to the instant case. However, thereis no dispute that Chloe has remained in foster care for sixteenconsecutive months.
Therefore, it is clear that the trial court was merely trying to establish that one of the four additional factors necessary to provide permanent custody did apply. The trial court did provide findings on two separate (B)(1) findings. However, the trial court states on its own that it is aware that there is some controversy to the use of R.C. 2151.414(B)(1)(d) in this case and therefore is merely providing such a finding and analysis of R.C.2151.414(B)(1)(d) in additional consideration to R.C.2151.414(B)(1)(a). Though the additional consideration of R.C.2151.414(B)(1)(d) was not necessary because the adjudication should be based on R.C. 2151.414(B)(1)(a) alone, the trial court merely created a harmless error by considering R.C.2151.414(B)(1)(d). Accordingly, the Morris' third assignment of error is overruled.
 {¶ 21} Next, we shall consider the fourth assignment of error regarding the Morris's claim that the trial court erred in finding that Chloe could not be placed with one of her parents within a reasonable time or should not be placed with either parent pursuant to R.C. 2151.414(B)(1)(a).
 {¶ 22} In order to enter a finding that the child cannot or should not be placed with his or her parents within a reasonable time, the trial court must review the factors under R.C.2151.414(E)(1) through (16) and all relevant evidence. If the trial court finds one of the factors present by clear and convincing evidence, the trial court must make the finding that the child cannot be placed with the parents.
 {¶ 23} A review of the record and the trial court's Judgment Entry in this case indicate that R.C. 2151.414(E)(2), (9), (12), and (15) apply. Specifically regarding R.C. 2151.414(E)(2), the record provides that Audrey and Tommy are addicted to both prescription and non-prescription substances of abuse. Throughout the last year, Audrey and Tommy have been indicted on numerous counts of deception to obtain a dangerous drug. Audrey has also been indicted on one count of possession of cocaine and one count of endangering her other daughter and arrested for public intoxication of a controlled substance. Tommy has been arrested on two occasions for driving under the influence. Both parents were provided the opportunity to seek treatment in lieu of conviction on their numerous counts of deception to obtain dangerous drugs, which they accepted; however, they violated the treatment and have both been sentenced to Department of Rehabilitation and Correction facilities. In addition, Audrey and Tommy have an extensive history of mental history which is so severe that they are both receiving disability income and are unemployed. Provided the evidence before the trial court, it could make a finding under R.C. 2151.414(E)(2).
 {¶ 24} The record also indicates that both parties have placed Chloe at a substantial risk of harm due to their unsuccessful repeated efforts to treat their drug abuse problems. As stated above, both parents had numerous criminal convictions for prescription medications and were granted the opportunity to seek treatment in lieu of conviction; however, the attempt was unsuccessful and the parents have been sentenced to incarceration. In addition, Audrey and Tommy rejected other treatment opportunities as well. Both Tommy and Audrey failed to attend multiple scheduled appointments with Five County Drug 
Alcohol as ordered by the Defiance County Court of Common Pleas and the case plan constructed for reunification of the parents with Chloe. Furthermore, Audrey and Tommy obtained prescription medications from other doctors outside of their treatment plan. Therefore, the evidence supports a finding under R.C.2151.414(E)(9).
 {¶ 25} In addition, the record provides that as of October 5, 2005, Tommy was sentenced to 56 months at the Ohio Department of Rehabilitation in Orient, Ohio and on October 31, 2005, Audrey was sentenced to 55 months at the Ohio Department of Rehabilitation and Correction in Marysville, Ohio. The Morris' argue that there may be an early release of one or both of the parents; however, there was nothing in the record that indicated that either parent would be granted an early release. Therefore, based upon the sentences of both parents it is likely that one or both of the parents will not be available to provide care for Chloe for at least eighteen months. Thus, given the evidence before it, the trial court could make a finding under R.C.2151.414(E)(12).
 {¶ 26} R.C. 2151.414(E)(15) provides that the court is to consider the seriousness, nature of likelihood of reoccurrence of the abuse or neglect that make the child's parents a threat to the child's safety. In this case, the trial court concluded that the severity of the chemical dependency of both parents and the extent of their incarceration established that Audrey and Tommy would not be able to provide a suitable home for Chloe in the near future such that Chloe cannot and should not be returned to the custody of the Morris' to face a similar cycle of substance abuse. Therefore, the trial court could make a finding under R.C.2151.414(E)(15) pursuant to the evidence before it.
 {¶ 27} In conclusion, the trial court was presented with clear and convincing evidence to support findings under various R.C. 2151.414(E) subsections. Therefore, the trial court did not err in finding that Chloe could not be placed with one of her parents within a reasonable time or should not be placed with either parent. Accordingly, the Morris' fourth assignment of error is overruled.
 {¶ 28} Finally, we shall address the second assignment of error regarding the Morris' assertion that the trial court erred in failing to consider available options to protect the best interest of the family including the failure to grant permanent or temporary custody to Chloe's grandparents (the "Chapmans") as an alternative to granting permanent custody to the Defiance County Department of Job and Family Services.
 {¶ 29} In this case, the trial court considered the factors of R.C. 2151.414(D) and found by clear and convincing evidence that it was in Chloe's best interest to grant the Defiance County Department of Job and Family Services permanent custody. For the following reasons we find that this determination is adequately supported by the record.
 {¶ 30} Pursuant to R.C. 2151.414(D)(1), the trial court stated in its review with respect to the Chapmans that it did not find that the Chapman's home would be a suitable placement because of the special needs of Chloe. Specifically, the trial court stated that special arrangements had been made for Chloe in her foster home including but not limited to an apnea monitor, special air handling system and extensive physical therapy to ameliorate her developmental delay. In addition, it was noted that the Chapmans smoke in their home which could cause some health concerns for Chloe with her breathing problems, Mr. Chapman had been convicted of domestic violence, the Chapmans had lost their home recently to bankruptcy, they both suffered from depression, and Mrs. Chapman had severe back problems which would not allow her to lift heavy objects which is noteworthy considering that Chloe is under the age of two.
 {¶ 31} According to R.C. 2151.414(D)(2), the trial court stated that Chloe was unable to express her wishes concerning the matter due to her age; therefore, the trial court relied on the Guardian Ad Litem report which recommended that permanent custody is in the best interest of Chloe and should be granted by the trial court. {¶ 32} In addition, the trial court stated with respect to R.C. 2151.414(D)(3) that Chloe had been placed in temporary custody and had remained with the same foster parents consecutively since that time. Therefore, it was not disputed that Chloe had remained in temporary custody with the Defiance County Department of Job and Family Services for more than twelve months.
 {¶ 33} R.C. 2151.414(D)(4) provides that the trial court consider the child's need for a legally secure permanent placement and whether that placement can be achieved without a grant of permanent custody to an agency. The trial court established that Chloe is an extremely young child who has suffered extensively in her life due to the faults and habits of her parents, including an extensive history of criminal behavior and substance abuse of oxycotin, alcohol, and other frequent medications. The trial court also stated that Chloe had suffered directly because of the substance abuse of Audrey because she had ingested oxycotin during her pregnancy and been involved in a rollover accident in which Audrey was cited for driving under the influence which was later reduced. After the accident, Audrey was asked to stay at the hospital until Chloe was born; however, she insisted upon leaving and left against doctor's orders, which the trial court stated "demonstrated a complete disregard for her own health and the health of her unborn child, Chloe." The trial court noted that Audrey and Tommy had not appropriately dealt with their substance abuse issues and because of this could not provide Chloe with a secure permanent placement at this time because they were both incarcerated on charges regarding their substance abuse problems.
 {¶ 34} R.C. 2151.414(D)(5) establishes that the trial court is to consider whether any of the factors in division (E)(7) to (11) of this section apply in relation to the parents and child. As stated above, division (E)(9) applies because both parents placed Chloe at a substantial risk of harm due to their repeated problems with drug abuse. The evidence clearly supports the trial court's finding that the Morris' had placed Chloe at a substantial risk of harm.
 {¶ 35} The trial court noted that it considered all the relevant factors in R.C. 2151.414(D) to determine whether permanent custody would be in Chloe's best interests. Upon our review of the record and all of the factors, it is our conclusion that clear and convincing evidence established that it was in the best interest of Chloe to be placed in permanent custody with the Defiance County Department of Job and Family Services rather than providing an alternative of granting permanent or temporary custody to the Chapmans. Therefore, the Morris' second assignment of error is overruled.
 {¶ 36} The Morris' claim in their fifth assignment of error that the trial court's determination that the grant of permanent custody of Chloe to the Defiance County Department of Job and Family Services was in Chloe's best interest was against the manifest weight of the evidence.
 {¶ 37} A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as being against the manifest weight of the evidence. McCage v. Dingess,
5th Dist. No. 03CA111, 2004-Ohio-5692, at ¶ 16, citing C.E.Morris Co. v. Foley Const. Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578, syllabus of the Court.
 {¶ 38} Upon review of the record, it is clear that the trial court considered the factors in both R.C. 2151.414(D) and (E), as provided above, and made the required findings necessary to grant the Defiance County Department of Job and Family Services permanent custody of Chloe. Furthermore, we find that there is competent and credible evidence in the record supporting the trial court's findings that Chloe could not be placed with her parents within a reasonable amount of time and that it was in Chloe's best interest that the trial court grant permanent custody to the Defiance County Department of Job and Services. Therefore, the Morris' fifth assignment of error is overruled.
 {¶ 39} Having found no error prejudicial to the Morris herein, in the particulars assigned and argued, we affirm the December 22, 2005 judgment of the Court of Common Pleas of Defiance County, Ohio, granting permanent custody of their daughter, Chloe, to the Defiance County Department of Job and Family Services.
Judgment affirmed.
 Rogers and Cupp, JJ., concur.