JOURNAL ENTRY AND OPINION
{¶ 1} Appellant T.L. (father) appeals the juvenile court order granting permanent custody of his child, M.L., to the Cuyahoga County Department of Children and Family Services (CCDCFS). He assigns the following two errors for our review:
"I. The trial court erred in finding that permanent custodywas in the best interest of [M.L.] and that she could not andshould not be placed with [the father] within a reasonable periodof time."
 "II. The trial court abused its discretion in failing to awardlegal custody to [M.L.'s] grandparents."
 {¶ 2} Having reviewed the record and pertinent law, we affirm the juvenile court's decision. The apposite facts follow.
 {¶ 3} On March 9, 2005, CCDCFS filed a complaint in juvenile court alleging that M.L., who was born February 18, 2005, was an abused, neglected, and dependent child because she was born addicted to narcotics. Emergency temporary custody was granted to CCDCFS, which subsequently placed the baby with her maternal uncle and aunt.
 {¶ 4} On May 10, 2005, an adjudicatory hearing was held. The mother, father, their respective attorneys, the CCDCFS social worker, and the child's guardian ad litem were all in attendance. After hearing the evidence, the juvenile court adjudicated the child as being abused because she tested positive for drugs at birth and was suffering from withdrawal. In addition, the court noted the mother and father suffered from chronic substance abuse, were homeless, and unemployed. The court noted the mother had two other children removed from her care under similar circumstances. The court also concluded the father had failed to obtain domestic violence counseling, failed to establish paternity, and failed to comply with the agency's referral for drug rehabilitation. The father had also failed to visit the child since her birth. A hearing regarding the disposition of the child was scheduled for August 17, 2005 in order to determine CCDCFS' right to permanent custody.
 {¶ 5} The father failed to appear at the disposition hearing, and his attorney could not account for his absence. Because the mother suffered from substance abuse problems, it was agreed the case would be transferred to the Cuyahoga County drug court program in an effort to provide her with substance abuse treatment prior to determining the permanent custody of the child. The mother, however, suffered a relapse in July 2005, and was subsequently ejected from the drug court program. Therefore, the matter was transferred back to the juvenile court for a dispositional hearing on October 31, 2005 regarding the permanent custody of M.L.
 {¶ 6} All the parties were present at the hearing. The mother stipulated to CCDCFS obtaining permanent custody because this would permit her brother to adopt the baby. The hearing, therefore, was directed to the father's ability to be reunited with the baby.
 {¶ 7} The evidence indicated that both the mother and father are long time drug users. The pair met while attending a half-way house for recovering drug addicts. One month after they met, the mother became pregnant. CCDCFS was assigned to the mother's case two months prior to her giving birth because she was using drugs while pregnant. At this time, CCDCFS referred both the mother and father for drug treatment, which they failed to attend.
 {¶ 8} During the pregnancy, the mother and father were unemployed and homeless, living in abandoned houses and cars. While the mother was in labor, the father gave her crack cocaine on the way to the hospital. Needless to say, the baby tested positive for narcotics and suffered from withdrawal. As a result, CCDCFS obtained emergency custody of the baby.
 {¶ 9} The mother strongly opposed the father or his parents receiving custody of the child. She claimed the grandparents' house was dirty and that former and current drug abusers visit the home. She also maintained the baby's father used drugs in the bathroom of his parents' house and that in the past, the grandfather provided them transportation to their drug dealers. She also stated that the baby's father "runs the show." That is, his parents do as he orders. Moreover, all the adult occupants in the home smoke cigarettes. The baby is not permitted to be around cigarette smoke because she suffers from asthma.
 {¶ 10} The mother had initially informed CCDCFS that her brother, who currently has custody of the child, molested her when she was a teenager. She later recanted the allegation and admitted she only made this accusation at the baby's father's insistence to increase her chances of receiving custody of the child.
 {¶ 11} The Guardian Ad Litem recommended the temporary custody of the baby be continued until the father was given the standard year to comply with the case plan. In recommending this, the Guardian Ad Litem relied on the fact that this was the father's first child in the system; therefore, he did not have a proven record.
 {¶ 12} Although the father contended at the hearing that he has been drug free for approximately seven months, he admitted he used drugs with the mother the previous month. At the time of the hearing, he had been receiving in-patient drug rehabilitation treatment at the Keating Center for the past month. Although the father refused to admit it, the treatment at the Keating Center was part of the condition of his probation. He received similar treatment three years ago, but relapsed after a year.
 {¶ 13} Although the baby was born in February, the father did not take a paternity test until June. This was in spite of the fact he knew the baby was given his last name at birth. He claims he tried to obtain drug treatment before entering the Keating Center, but CCDCFS did not have funding in order to provide him treatment. He admits he was offered treatment prior to the baby's birth, but lost this opportunity for financial assistance for treatment by failing to attend the recommended intensive out-patient program. The father also admitted he beat the mother six-to-seven times while she was pregnant, but does not believe he needs domestic violence counseling. He has not held a job for the past two years.
 {¶ 14} The father claimed he visited the baby every Wednesday except for the month of September, when he was arrested on a warrant. However, the social worker's records indicate he missed eight visitations between June and September. At one visitation, he was removed by security due to his violent verbal assault on the mother. The baby was left trembling after this conduct. The father admitted he supplied the baby's mother with cocaine while she was in labor. The baby's uncle and aunt gave the father their telephone number and encouraged him to maintain contact with the baby. However, he never called to check on her welfare or to request a visitation.
 Failure to Award the Father Permanent Custody {¶ 15} In his first assigned error, the father argues the trial court erred by granting permanent custody to CCDCFS without giving him the opportunity to show he could comply with the case plan. He argues that CCDCFS, from the time the baby was born, had the goal of obtaining permanent custody instead of reunification, and that because the baby is only ten months old, the court should extend the temporary custody order instead of granting permanent custody.
 {¶ 16} Our review of a custody determination by the juvenile court begins with the recognition that the court's exercise of discretion should be accorded "the utmost respect,"[1]
taking into account that "the knowledge gained through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record."[2] "A court exercising Juvenile Court jurisdiction is invested with very broad discretion, and, unless that power is abused, a reviewing court is not warranted in disturbing its judgment."[3]
 {¶ 17} We note initially that the father contends permanent custody is usually not sought until the child has been in custody for a consecutive twelve month period. However, R.C.2151.414(B)(1) does not prevent the agency from seeking custody sooner.[4] Pursuant to R.C. 2151.414(B)(1)(d), the twelve month time dictates when the agency is required to file for permanent custody. Permanent custody may be awarded prior to the agency's required time for filing for custody, as long as the evidence indicates it is in the best interest of the child to award permanent custody and the child cannot be placed with a parent within a reasonable time.[5] After the twelve month period, the agency need only show it is within the best interest of the child to award permanent custody.[6]
 {¶ 18} Therefore, in the instant case, in considering the award of permanent custody, the juvenile court had to first determine, by clear and convincing evidence, whether it was in the best interest of the child to grant permanent custody. In determining the best interest of the child during the permanent custody hearing, the court must consider the factors listed in R.C. 2151.414(D), which include the reasonable probability the child will be adopted, the interaction of the child with the child's parents, siblings, and foster parents, the wishes of the child, the custodial history of the child, and the child's need for a legal, secure, permanent placement. Only one of these factors is necessary to support the award of permanent custody.[7]
 {¶ 19} Here, the record reveals that the child is thriving in the care of her maternal uncle and aunt. The uncle and aunt have expressed an interest in adopting the child if permanent custody is granted. Moreover, the uncle and aunt have also adopted the baby's half-brother. Accordingly, there is clear and convincing evidence that supports the trial court's determination that permanent custody is in the best interest of the child.
 {¶ 20} Because CCDCFS did not have custody of the child for a consecutive twelve months, in addition to determining the child's best interest, the court also had to determine whether the child could be placed with the father within a reasonable time.[8] The court is required to enter a finding that the child cannot be placed with a parent within a reasonable time if any factors set forth in R.C. 2151.414(E) apply, including the following:
"(1) Following the placement of the child outside the child'shome and notwithstanding reasonable case planning and diligentefforts by the agency to assist the parents to remedy theproblems that initially caused the child to be placed outside thehome, the parent has failed continuously and repeatedly tosubstantially remedy the conditions causing the child to beplaced outside the child's home. In determining whether theparents have substantially remedied those conditions, the courtshall consider parental utilization of medical, psychiatric,psychological, and other social and rehabilitative services andmaterial resources that were made available to the parents forthe purpose of changing parental conduct to allow them to resumeand maintain parental duties.
 "(2) * * * Chemical dependency of the parent that is so severethat it makes the parent unable to provide an adequate permanenthome for the child at the present time and, as anticipated,within one year after the court holds the hearing * * *."
"* * *
"(4) The parent has demonstrated a lack of commitment towardthe child by failing to regularly support, visit, or communicatewith the child when able to do so, or by other actions showing anunwillingness to provide an adequate permanent home for thechild."
 {¶ 21} Here, the trial court enumerated R.C. 2151.414(E)(1), (2), and (4) as applicable to the father.[9] In awarding permanent custody to CCDCFS, the trial court found that the father had "failed continuously and repeatedly to substantially remedy the conditions causing the child to be removed from the home;" the father "has a chronic chemical dependency that is so severe that it prevents him from being able to provide the child with an adequate permanent home at the present time and, as anticipated, within one year;" and, the father "has demonstrated an unwillingness to provide an adequate permanent home for the child."
 {¶ 22} In the instant case, the trial court was presented with clear and convincing evidence that, despite the agency's referrals, the father failed to participate in any of the services to address his needs regarding domestic violence and substance abuse. The evidence at trial indicated that at the time of the permanent custody hearing the father had not completed drug treatment, had not received domestic violence counseling, was not employed, and was not prepared to provide a home for the child. Accordingly, the trial court's determination that the child could not be placed with the father within a reasonable time is supported by clear and convincing evidence.
 {¶ 23} In addition, the social worker testified that even if the father were to complete the six month drug treatment program, he would not automatically obtain custody. He would have to prove he could stay sober outside the treatment center, obtain a job, and appropriate housing. Given the father's prior history of reverting back to abusing drugs after leaving treatment, being homeless for the past several years, and unemployed for the past two years, his ability to obtain these objectives within the year are doubtful.
 {¶ 24} Although the father argues he has not had an opportunity to comply with the case plan, the fact is, CCDCFS attempted to work with him prior to the baby's birth. The father, however, refused to accept the referral for treatment. Moreover, although the father did not establish paternity until late June, that was because he did not consent to a paternity test until June. He was well aware of the baby's birth and consented to her being assigned his last name at birth. Therefore, his argument he did not feel the need to comply with a case plan until paternity was established is disingenuous. Notably, he missed eight visitations between the time he established paternity and September.
 {¶ 25} We conclude that the trial court made its findings according to the statutory guidelines of R.C. 2151.414 and that these findings are supported by clear and convincing evidence. Therefore, the father's first assigned error is overruled.
 Permanent Custody to the Paternal Grandparents {¶ 26} In his second assigned error, the father argues the trial court abused its discretion by not awarding custody to the baby's paternal grandparents. We disagree.
 {¶ 27} Pursuant to R.C. 2151.353(A)(3):
"If a child is adjudicated an abused, neglected, or dependentchild, the court may * * * award legal custody of the child toeither parent or any other person who, prior to the dispositionalhearing, files a motion requesting legal custody of the child."
 {¶ 28} In the instant case, the grandparents had filed the requisite motion, but then withdrew the motion when the mother was ordered to obtain rehabilitation through the drug court program. They never refiled their motion once the case was transferred back to the juvenile court. Therefore, the grandparents have no standing to request custody.
 {¶ 29} Moreover, the evidence indicated the child is thriving in the care of her uncle and aunt, where she has lived since being released from the hospital. The uncle and aunt are younger than the grandparents and already have custody of the child's half-brother. The grandparents also suffer from arthritis and emphysema. In addition, the evidence indicated that the inhabitants of the grandparent's home smoke cigarettes, which could be detrimental to the child's health because of her asthma. Accordingly, the father's second assigned error is overruled.
Judgment affirmed.
It is ordered that appellees recover from appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Calabrese, Jr., P.J., and Rocco, J., Concur.
[1] See In re Campbell (Oct. 12, 2000), Cuyahoga App. Nos. 77552 and 77603, citing Reynolds v. Goll (1996),75 Ohio St.3d 121, 124; see, also, In re Awkal (1994), 95 Ohio App.3d 309,316.
[2] Campbell, citing Goll.
[3] In re Pieper Children (1993), 85 Ohio App.3d 318, 330.
[4] In re C.W., 104 Ohio St.3d 163.
[5] In the matter of: Jason S. and Jacob S., 6th Dist. No. L-05-1264, 2006-Ohio-726; In re Chloe Morris, 3rd Dist. No. 4-06-05, 2006-Ohio-3231; In the Matter of: Christopher Villa,
3rd Dist. NO. 9-01-21, 2001-Ohio-2300.
[6] In re C.W, supra.
[7] In re Moore (Aug. 31, 2000), Cuyahoga App. No. 76942, citing In re Shaeffer Children (1993), 85 Ohio App.3d 683.
[8] R.C. 2151.414(B)(1)(a).
[9] The court also issued findings relative to the mother, however, since she withdrew her motion for permanent custody, we only address the court's findings regarding the father.