[Cite as *In re C.D.Y.*, 2019-Ohio-4262.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE C.D.Y., ET AL.                        :
                                            :            No. 108355
Minor Children                              :
                                            :
[Appeal by S.S., Mother]                    :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** October 17, 2019

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD-17906669 and AD-17906670

---

***Appearances:***

Phyllis Brooks, *for appellant.*

PATRICIA ANN BLACKMON, J.:

{¶ 1} This cause came to be heard upon the accelerated calendar pursuant to App.R. 11.1 and Loc.App.R. 11.1. S.S. ("Mother") appeals from the juvenile court's judgment denying her motion to modify custody and designating Ashley Franklin ("Franklin") as the legal custodian of her children, C.Y. and K.Y. Mother assigns the following errors for our review:

I.   Trial court erred by failing to conduct an unsuitability analysis and failing to make an express finding of unsuitability.

II. Trial court erred in applying the best interest test.

III. Trial court erred in granting custody to a person not properly before the court.

{¶ 2} Having reviewed the record and pertinent law, we reverse the trial court's judgment finding that the court erred by denying Mother's motion to modify custody and designating Franklin as the legal custodian of C.Y. and K.Y. The apposite facts follow.

{¶ 3} On April 28, 2017, the Cuyahoga County Department of Children and Family Services ("CCDCFS") filed a complaint for neglect, abuse, and temporary custody of C.Y. and K.Y. to C.Y., Sr., ("Father"). This complaint alleged that Mother left the children unattended while she went to work, and heroin and marijuana were found in the home within reach of the children. The court granted Father emergency temporary custody that same day. On July 14, 2017, Father filed a motion for legal custody of the children. On July 24, 2017, Mother and Father stipulated to an amended complaint, which alleged that Mother left the children with an inappropriate caregiver, who then left the children unattended. The allegations regarding drugs in the home remained the same.

{¶ 4} On August 9, 2017, the court granted Father's motion for legal custody of the children with an order of protective supervision by CCDCFS. The court found that the children's "continued residence in or return to the home of [Mother] will be contrary to the child's best interest." On February 12, 2018, the

court terminated the protective supervision order, finding that it "is not necessary and is not in the child[ren]'s best interest."

{¶ 5} On June 15, 2018, Mother filed a motion to modify custody, arguing that there was a change of circumstances in that Father was incarcerated and left the children "with a non family member." The court held a hearing on this motion seven months later, on January 15, 2019. At this hearing, Franklin, who is Father's girlfriend, identified herself as a "party involved" and testified that Father was still in jail and she had been caring for the children since June 2018.

{¶ 6} On February 13, 2019, the court denied Mother's motion to modify custody and found that "it is in the best interests of the child[ren] that [Franklin] is designated as the temporary legal custodian of" the children. The court granted Mother parenting time. It is from this order that Mother appeals.

{¶ 7} Before reviewing the merits of this case, we note that Mother's appeal is unopposed. Neither Father nor Franklin has made an appearance or otherwise participated in this appeal. Furthermore, CCDCFS, as well as the Office of Child Support Services, filed notices of intent to forego the filing of appellate briefs in this case.

**Legal Custody**

{¶ 8} We review a trial court's order regarding legal custody of a child under an abuse of discretion standard. *In re S.E.*, 8th Dist. Cuyahoga No. 96031, 2011-Ohio-2042, ¶ 13. In determining whether a lower court abused its discretion, "a reviewing court may not simply substitute its own judgment * * *." *Baxter v.*

*Thomas*, 8th Dist. Cuyahoga No. 101186, 2015-Ohio-2148, ¶ 21. Rather, an abuse of discretion is an attitude that is unreasonable, arbitrary, or unconscionable. "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.* "Arbitrary" is defined as a decision made "'without consideration of or regard for facts [or] circumstances.'" *Black's Law Dictionary* 125 (10th Ed.2014).

{¶ 9} Legal custody is defined in R.C. 2151.011(B)(21) as

a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities.

{¶ 10} Legal custody and permanent custody are alternative disposition choices. *Compare* R.C. 2151.011(B)(21) with R.C. 2151.011(B)(31). "Although there is no specific test or set of criteria set forth in the statutory scheme [regarding legal custody cases], courts agree that the trial court must base its decision on the best interest of the child." *In re N.P.,* 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23.

{¶ 11} The "best interest" test under R.C. 2151.414(D) provides guidance, and courts shall consider the following relevant factors: the relationship "of the child with the child's parents, siblings, [and] relatives * * *; [t]he wishes of the child, as expressed directly by the child or through the child's guardian ad litem; [t]he custodial history of the child * * *; [t]he child's need for a legally secure placement * * *;" and various factors relating to the child's parents, including

criminal history, substance abuse issues, compliance with case plan objectives, abandoning the child, and whether the parents have had "parental rights involuntarily terminated with respect to a sibling of the child * * *." R.C. 2151.414(D) and (E).

{¶ 12} The court may also look to the best interest factors found in R.C. 3109.04(F)(1). *See In re R.L.C.,* 8th Dist. Cuyahoga No. 98283, 2012-Ohio-5893, ¶ 14. These factors include the following:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; * * *

**(i)** Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

**(j)** Whether either parent has established a residence, or is planning to establish a residence, outside this state.

R.C. 3109.04(F)(1)(a)-(j).

{¶ 13} Given this standard of review, Mother's second assigned error, which argues that the court erred by applying the best interest test, is overruled.

{¶ 14} Furthermore, when a person is awarded legal custody of a child who has been adjudicated abused, neglected, or dependent, courts make an implicit determination of the unsuitability of the child's parents. *In re C.R.,* 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188, ¶ 22. Accordingly, Mother's first assigned error, which states that the "court erred by failing to conduct an unsuitability analysis and failing to make an express finding of unsuitability" is overruled.

**Legal Custody to a Nonparent**

{¶ 15} Pursuant to R.C. 2151.353(A)(3), after a child has been adjudicated abused, neglected, or dependent, the court may "[a]ward legal custody of the child to * * * any * * * person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings." Additionally, the court cannot award legal custody of a child to a nonparent unless he or she "signs a statement of understanding for legal custody that contains" various provisions listed in the statutes. R.C. 2151.353(A)(3)(a)−(d).

{¶ 16} "Compliance with the statutory mandates in R.C. 2151, et seq., and the rules of juvenile procedure is mandatory. Furthermore, the court has repeatedly held that any person wishing legal custody of a child must, prior to the dispositional hearing, file a written motion requesting such custody." *In re C.T.*, 8th Dist. Cuyahoga No. 84648, 2005-Ohio-887, ¶ 22. *See also In re M.L.,* 8th Dist. Cuyahoga No. 87424, 2006-Ohio-5931, ¶ 28 (grandparents had no standing to request custody of the child after they withdrew their requisite motion for custody); *In re T.S.,* Fourth Dist. Jackson No. 17CA7, 2018-Ohio-49 ("concluding that blood relatives of a child, such as grandparents, have no legal or substantial right to custody and must rely on a statutory right, such as the right to file a motion for custody under R.C. 2451.353(A)(2)(d)").

{¶ 17} Upon review of the record, we find that Franklin did not file a motion for legal custody of the children, nor was she identified as a proposed legal custodian in the complaint or any other motion filed in this case.[1] Furthermore, it does not appear that the court complied with R.C. 2151.353(A)(3)(a)−(d) by having Franklin sign a statement of understanding. *See In re B.F.,* 5th Dist. Licking No. 2009-CA-007, 2009-Ohio-2978, ¶ 34 ("R.C. 2151.353 requires a person seeking legal custody

---

[1] The dissent references a power of attorney form that Father allegedly signed. However, this issue was not raised at the hearing on Mother's motion to modify, in the court's accompanying journal entry, or on appeal. To quote this dissent, "[i]t is not this court's responsibility or role to advocate on behalf of parties in the absence of developed arguments." Post at ¶ 40.

to file a motion prior to the dispositional hearing, and the movant must also indicate he or she understands the responsibility legal custody entails").

{¶ 18} Mother's appellate brief aptly summarizes her argument in her third assigned error as follows: "The Court used the Motion filed by [Mother] the natural parent for the return of her children to grant custody to a non parent non party (girlfriend) who did not file a single document." We agree and find that the court erred by sua sponte designating Franklin as the legal custodian of the children.

{¶ 19} At the hearing on Mother's motion to modify custody, Mother appeared pro se. Mother first called a family member, S.A., to testify. S.A. testified that Mother is a good parent to C.Y. and K.Y. S.A. further testified that ever since the children have been living with Franklin, their relationship with Mother's family has been "estranged." S.A. testified that she sees the children when they visit Mother on weekends. Asked how the children act when it is time to leave Mother's, S.A. answered, "They get sad because they don't want to go and they want to stay." According to S.A., the children "don't understand why, you know, they can't stay and why they have to leave."

{¶ 20} The children's paternal grandmother ("Grandmother") testified that when the children were in Mother's care, she had a close relationship with them and saw them "just about every day." According to Grandmother, Franklin will not let her see the children. Grandmother testified that she does not know how long Father will be in jail. Asked about her relationship with Mother, Grandmother testified

that: "I always looked at you as a daughter.  Even when you and my son broke up, you and I always stayed in contact."

{¶ 21}  Grandmother testified that C.Y., who is the older of the two children, "used to be more playful and he stay[s] angry now.  * * * He tells me, you know, he would prefer to be with his mom, of course, because his dad ain't there."  Asked if she thought the children should be returned to Mother's care, Grandmother testified as follows:  "I think they should be returned to you for the simple fact that you're their birth mother and their birth father is not around.  If the kids [are] going to be in anybody's care, I feel that they should be in yours because you are their birth mother."

{¶ 22}  Next, Mother called Franklin to testify.  Franklin stated to the court, "I don't have nothing to say."  The court advised Franklin to testify, and Franklin acquiesced.  Portions of Franklin's testimony on cross-examination follow.

> Q: Do you have any objection as to why the kids should not be returned to me?
>
> A: My whole thing is this.  Everybody looking at it as Ashley wrong, Ashley this, Ashley that, Ashley this.
>
> At the time when [Father] got arrested, [Mother] didn't have any rights to the kids.  So if [Father] wouldn't have put Ashley in place, they would have been in foster care.  [Grandmother] was in a hospital, so they would have been in foster care.
>
> So why everybody is like Ashley's the wrong person, Ashley's this, Ashley's that, Ashley's the one who kept those kids so that they could stay in contact with them.
>
> When [Father] had the kids, [Father] didn't want [Mother] to see the kids.  Ashley was the one pushing the issue, oh yes, let her see

the kids.  That's their mother.  Let her see the kids.  Let her see the kids.

* * *

Whatever their issue was, that was between them.

Up until we came to Court and we got in front of you, I would still consult with their father.  [Mother] wants to see the kids.  Is it okay?  No, don't let her see them.

Then it was no, because still at the end of the day [Father] still had rights to those kids.  So if he said no, it was no until we came to Court.

Once we came to Court, we set in place everything for her to see the kids.

If I had something that did come up and I wanted to do with the kids, that was fine because at one point I didn't feel like it was fair that I had them Monday through Friday, then the weekends I can't do anything with them on the weekends because Monday through Friday we at work they go to school.

So there are some days out of the weekend that she wouldn't get them because of stuff that I would want to do with them.

But past that, during breaks, vacation times, they off from school, she had them.

Q:   But the question was, are there any objections, any particular reason why you don't think that they should be with mom?

A:   I just feel like they [are a] better fit with me.

Q:   Okay.  Can you explain that?

A:   Because I feel like with me it's more structure.  Like they go to bed at a certain time.  They can't wake up and tell me, oh, we don't want to go to school because we just don't want to go.

* * *

Q:   Do you have any proof as to the amount of days that [C.Y. was] absent from school?

A:    * * * No, I don't have the paperwork * * *.

Q:    And what did that paper say?

A:    I don't recall.

* * *

Q:    You mentioned that you said that they have structure with you. Are you implying that they don't have structure with me?

A:    I don't have anything else to say.

THE COURT:    You have to answer the question.

A:    Well, when the lady came to the house and she wrote it down on the record from [CCDCFS] that [C.Y.] stated he wants to be with his mother, why? Because there is no rules.

The only rule we got in my mom house is we can't break nothing. And that's what he said and also told the worker. So they should have that information on file, because that's what he stated to her.

Q:    So you say they have a bed time. Do you think I don't have a bedtime for them?

A:    They haven't been at your home for I don't know how long. When they * * * lived with you, I wasn't there in person at the time, so I don't know what bedtime you have. * * *

Q:    Do they ever have conversations with you about me?

A:    No. We don't talk about you. The only conversation we had with you was when the worker came.

The worker asked the kids did they want to live with their mother. They stated to the worker, no. And hopefully she documented that because that's when she came to the house.

{¶ 23} Next, Mother called herself as a witness, but the court would not let her testify, telling Mother that she could say what she wanted to say in closing

argument. The court asked Franklin if she wanted to call any witnesses. Franklin replied, "No."

{¶ 24} The court then made the following findings.

{¶ 25} "This Court did order [CCDCFS] to investigate * * * Franklin's home and also to look at [Mother's] home, and there were no problems identified in the home of * * * Franklin, and the children are reported to be doing well there and that there's not any problems." The court continued:

> Clearly, mother has a right to her children, but being the mother in and of itself isn't enough to modify custody.
>
> The children have shown like a great improvement since they've been placed with the father with their grades and their educational skills and the children are content and happy where they are.
>
> And I understand that at parenting classes, children are adaptable, but that doesn't mean that they should have to adapt all the time.
>
> I do think there is a problem it sounds like with visitation.
>
> * * *
>
> The Motion to Modify Custody is denied at this time. The children are stable and they're established.
>
> It's not in their best interest to uproot them and make them change schools and activities.
>
> * * *
>
> [CCDCFS] has approved * * * Franklin's home and found no problems with it and did find that the children were doing well in the home and were happy in the home and indicated that they wished to stay there.
>
> So that will be the order of the Court.

{¶ 26} The court's accompanying journal entry designates Franklin as the legal custodian[2] of the children.

{¶ 27} It is well-settled that prior to modifying a child custody order, the court must find that a change of circumstances occurred regarding either the child or the person who was granted legal custody. *See* R.C. 2151.42(B).

{¶ 28} Upon review in the case at hand, we find that the court failed to make a finding regarding a change in circumstance. We can unequivocally say that Father being incarcerated for the seven months that passed between the time Mother filed her motion to modify[3] and the time the court held the hearing is a significant change in circumstance considering Father had legal custody of the children.

---

[2] The journal entry states that Franklin is the "temporary legal custodian" of the children. R.C. 2151.011, which defines terms used in juvenile court, does not recognize a custody disposition of "temporary legal." In the case at hand, Father was awarded legal custody of the children. Legal custody may be modified or terminated only by following the procedures identified in R.C. 2151.42. Temporary custody, which is a separate and distinct disposition that is not at issue in this case, "may be terminated at any time at the discretion of the court * * *." R.C. 2151.011(B)(55).

[3] Contrary to the dissent's assertion that "[t]here is no evidence in the record that Father remains incarcerated," Franklin and Grandmother testified that Father was incarcerated in June 2018 and remained incarcerated at the time of the hearing. It is also undisputed that Franklin was the sole caregiver for the children from June 2018 to the time of the hearing. Ohio courts consistently hold that judgments must be based on circumstances as they stood at the time of the hearing. *See, e.g., In re N.P.*, 8th Dist. Cuyahoga Nos. 97846 to 97855, 2012-Ohio-4298, ¶ 30 (concluding that the trial court's judgment was supported by competent evidence in the record. "Specifically, the Department presented evidence that at the time of the hearing, N.P. and R.W. had been in the agency's custody for 2 years, 11 months and 21 days"); *Cook v. Cook*, 5th Dist. Licking No. CA-3549, 1991 Ohio App. LEXIS 2444 (May 16, 1991) ("The court must consider only the extant circumstances at the time of the hearing. To do otherwise would lead to impractical and inequitable results").

{¶ 29} We turn to the best interest of the children factors. The court's journal entry denying Mother's motion to modify custody and awarding custody to Franklin repeats the statutory factors regarding best interest, but provides no analysis or findings of fact pertaining to the children in the case at hand. Therefore, we focus on evidence presented at the hearing on Mother's motion to modify custody.

{¶ 30} Starting with R.C. 2151.414, the evidence in the record appears to show that the children have good relationships with Mother and Father. The wishes of the children were not considered by the court in the instant case. The court did not conduct an in camera interview of the children. The GAL did not appear at the hearing, nor did a representative from CCDCFS. Furthermore, no documentary evidence, such as a GAL report or Mother's case plan, was introduced at the hearing or otherwise filed with the court. The custodial history of the children was not mentioned at the hearing, although a review of the record shows that the children were removed from Mother's care and placed in Father's care in April 2017. Father went to jail in June 2018, Mother filed her motion to modify custody in June 2018, and the court held a hearing in January 2019. The children, whose dates of birth are April 3, 2009, and December 14, 2012, are in need of legally secure placement.

{¶ 31} It does not appear from the record that the court considered the statutory factors relating to the parents in this case. As stated previously, the court seemed to ignore the fact that Father was incarcerated. Nothing was mentioned regarding the criminal history, substance abuse issues, compliance with case-plan

objectives, abandoning the children, or termination of parental rights cases involving either Mother or Father.

{¶ 32} Courts also may consider the best interest factors found in R.C. 3109.04(F)(1). As to the wishes of the parents, Mother made it clear during the hearing that she wished to regain custody of her children, despite the fact that the court denied her request to testify. *See In re M/W Children*, 1st Dist. Hamilton No. C-180623, 2019-Ohio-948, ¶ 43 (although "[t]here are no mechanical tests for deciding when the juvenile court errs in denying a parent's request to testify," the court abused its discretion by not "taking additional evidence," and could have "easily remed[ied] the harm by permitting mother to testify"); *State v. Robinson*, 8th Dist. Cuyahoga No. 79825, 2002 Ohio App. LEXIS 816 (Feb. 28, 2002) ("[i]t is well settled that what counsel says in opening statement and closing argument is not evidence * * *").

{¶ 33} There is no evidence in the record about Father's wishes for the children.

{¶ 34} As stated earlier, the court did not consider the children's wishes in the case at hand. There is some evidence in the record regarding the children's relationships with family members, and these relationships appear to be good across the board. However, there was also evidence in the record that Franklin does not allow the children's paternal grandmother to see the children. No reason for this was established. Additionally, there is evidence in the record that Mother's family does not see the children as often as they did before Franklin became the children's

caregiver. The evidence in the record regarding the children's adjustment to home, community, and school is minimal. For example, at the hearing the court found that the "children have shown * * * great improvement since they've been placed with the father with their grades and their educational skills * * *." However, no evidence was presented at the hearing to support this finding.

{¶ 35} There is no evidence in the record concerning the mental and physical health of any parties in this case. As to visitation, there is evidence in the record that Father would not allow Mother to see the children at times and that issues arose between Mother and Franklin regarding Mother's visitation. There is no evidence in the record to support the court's finding that CCDCFS "looked into" Franklin's housing situation. Furthermore, the court made no finding regarding Mother's home or Mother's progress on her case plan.

{¶ 36} Upon review, we find that Mother presented sufficient evidence to show a change in circumstances regarding Father, who was the children's legal custodian at the time the motion to modify was filed. We are aware that the record remains undeveloped concerning the statutory best interest factors. However, we find that the court abused its discretion by failing to take into consideration essentially anything other than Franklin's testimony in this case. As stated earlier, the court abused its discretion by sua sponte awarding Franklin legal custody, because she did not file a motion requesting custody as required under R.C. 2151.353(A)(3). Furthermore, her testimony — and once again, she is Father's girlfriend — may be relevant to the best interest of the children, but should not weigh

so heavily as to control the disposition of this case. *See In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56 ("The court must consider all of the elements in R.C. 2151.414(D) as well as other relevant factors. There is not one element that is given greater weight than the others pursuant to the statute").

{¶ 37} Accordingly, Mother's third assigned error is sustained. The judgment granting legal custody of the children to Franklin is reversed, the case is remanded, and the court is instructed to hold another hearing on Mother's motion to modify.

{¶ 38} Judgment reversed and case remanded to the juvenile court for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, JUDGE

MARY EILEEN KILBANE, A.J., CONCURS
IN JUDGMENT ONLY;
SEAN C. GALLAGHER, J., CONCURS IN PART
AND DISSENTS IN PART WITH ATTACHED OPINION

SEAN C. GALLAGHER, J., CONCURRING IN PART AND DISSENTING IN PART:

{¶ 39} I respectfully concur in part and dissent in part. Mother advanced three assignments of error. In the first two, she claims that the best-interest-of-the-child test is not appropriate and the court erred by failing to conduct an unsuitability analysis. The majority correctly overruled those arguments. In the final assigned error, Mother claims that the trial court erred in permitting Franklin to participate in the proceedings because Franklin did not file any motion or document demonstrating her legal authority to be present. Mother is mistaken.

{¶ 40} The issue appealed was the trial court's decision that adopted the magistrate's decision to deny Mother's motion to modify custody and temporarily designate Franklin as custodian of the children based on the power of attorney Father signed in favor of Franklin. The magistrate reviewed and accepted the power of attorney on September 4, 2018. At no point has Mother challenged that power of attorney. Further, Mother has not cited, much less discussed the applicability of R.C. 2151.42. In short, none of Mother's arguments address the full extent of what occurred below or the applicable law guiding those proceedings. App.R. 16(A)(7). It is not this court's responsibility or role to advocate on behalf of parties in the absence of developed arguments.

{¶ 41} The sole claim during the hearing conducted by the magistrate was whether father's temporary incarceration was a change in circumstances sufficient to warrant the upheaval of the children's lives and to return custody to Mother. After thoroughly reviewing the statutory factors, the trial court disagreed and adopted the

magistrate's decision denying the motion. There is no evidence in the record that Father remains incarcerated, was even convicted of any criminal acts, or is otherwise unable to resume his responsibilities as the custodial parent. I would affirm based on the limited arguments presented for consideration.